JEFFERSON CITY, Missouri Public Service Commission and D. M. Schmitt, Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants,

Missouri Pacific Railroad Company, Intervening Defendant.

Civ. A. No. 1523.

United States District Court, W. D. Missouri, C. D.

Aug. 3, 1970.

As Amended Aug. 21, 1970.

Michael P. Riley, Byron L. Kinder, Jeremiah D. Finnegan, Jefferson City, Mo., Gordon P. MacDougall, Washington, D. C., for plaintiffs.

Hilary A. Bush, Kansas City, Mo., Robert S. Davis, St. Louis, Mo., for Missouri Pacific.

Arthur J. Cerra, Gen. Counsel, Raymond M. Zimmet, Atty., I. C. C., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., Bert C. Hurn, U. S. Atty., Dept. of Justice, Kansas City, Mo., Paul Anthony White, U. S. Atty., Dept. of Justice, Kansas City, Mo., for defendants.

Before GIBSON, Circuit Judge, BECKER, Chief District Judge, and HUNTER, District Judge.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT GRANTING INJUNCTION AGAINST DISCONTINUANCE OF PASSENGER TRAINS

BECKER, Chief District Judge.

The plaintiffs brought this action to enjoin, annul, suspend and set aside that part of an order of the Interstate Commerce Commission ("ICC" hereinafter) granting to the Missouri Pacific Railroad Company ("MoPac" hereinafter) authority to discontinue its intrastate passenger trains Nos. 14 and 17 operating between St. Louis, Missouri, and Kansas City, Missouri.

### Statutes Involved

Jurisdiction and venue to entertain this action are provided in the following statutes:

§ 1336, Title 28, U.S.C.A., providing for jurisdiction in the district courts; and

§ 1398, Title 28, U.S.C.A., providing for venue in the judicial district wherein is the residence or principal office of any of the parties bringing the action; and

§ 17(9), Title 49, U.S.C.A., providing for judicial review of decisions of the ICC.

The composition of the Court, the powers and procedures of the Court and the scope of review are primarily provided in the following statutes:

§ 2321 to § 2325, Title 28, U.S.C.A., relating procedure, process, parties, stay, and suspension *pendente lite*, composition of the Court and granting of interlocutory and permanent injunctions.

The Interstate Commerce Act, Chapter I, Title 49, U.S.C., providing for the

regulation of interstate carriers by the Interstate Commerce Commission, and including § 13a(2) providing for discontinuance or change in operation of intrastate trains and the procedure therefor.

The Administrative Procedure Act, including § 551 to § 559 inclusive, and § 701 to § 706 inclusive, of Title 5, U.S.C.A.

### Proceedings and Judgment of Court

Pursuant to the foregoing statutes (1) this action was filed, (2) a restraining order was issued, (3) a Three Judge Court was convened, (4) the restraining order was extended until further order of Court, (5) the Missouri Pacific was permitted to intervene as a defendant, (6) a plenary hearing was held by the Three Judge Court and (7) these findings of fact, conclusions of law and judgment granting an injunction against discontinuance of passenger trains Nos. 14 and 17 were adopted by this Three Judge Court.

### Findings of Fact and Conclusions of Law

MoPac operates daily four ("two pairs") of intrastate passenger trains between St. Louis, Missouri, and Kansas City, Missouri. The trains serve the plaintiff municipal corporation Jefferson City, Missouri, and other communities in Missouri. The schedule of these trains is set forth in the challenged report (Appendix A, page 804) as follows:

## APPENDIX A

*Missouri Pacific Railroad Company schedules, trains Nos. 17-14 and 15-16, between St. Louis and Kansas City, Mo., together with mileages and populations*

| (Read down) train No. 17 | Train No. 15 | Miles | | Population | Train No. 16 | (Read up) train No. 14 |
|---|---|---|---|---|---|---|
| a.m. | p.m. | | | | p.m. | p.m. |
| 9:30 | 3:30 | 0 | Lv--St. Louis------Ar | 710,000 | 5:10 | 10:00 |
| #9:50 | #3:50 | 13 | --Kirkwood------ | 32,000 | @4:30 | @9:25 |
| 10:27 | *4:25 | 51 | --Washington---- | 7,961 | 3:50 | 8:25 |
| ------ | *4:50 | 77 | --Hermann------ | 2,536 | ------ | *7:57 |
| ------ | *5:00 | 85 | --Gasconade---- | 333 | ------ | ------ |
| ------ | *5:12 | 97 | --Chamois------ | 658 | ------ | *7:35 |
| 11:40 | 5:40 | 122 | Ar--Jefferson City -Lv | 29,700 | 2:40 | 7:10 |
| 11:41 | 5:43 | | Lv-------do-------Ar | | 2:35 | 7:00 |
| p.m. | | | | | | |
| 12:10 | 6:19 | 147 | --California----- | 2,788 | 2:04 | 6:19 |
| *12:22 | ------ | 159 | --Tipton--- ----- | 1,639 | ------ | ------ |
| 12:47 | 7:00 | 185 | --Sedalia------- | 25,000 | 1:25 | 5:40 |
| *1:12 | ------ | 204 | --Knobnoster---- | 2,292 | *12:57 | ------ |
| 1:25 | *7:38 | 215 | --Warrensburg--- | 11,000 | 12:45 | 5:10 |
| *1:39 | ------ | 229 | --Holden-------- | 1,951 | ------ | ------ |
| *1:59 | *8:15 | 246 | --Pleasant Hill-- | 2,689 | *12:13 | *4:40 |
| @2:13 | *8:27 | 256 | --Lee's Summit-- | 13,000 | #12:01 | ------ |
| | | | | | a.m. | |
| *2:28 | 8:40 | 270 | --Independence-- | 97,000 | *11:45 | *4:15 |
| 3:00 | 9:25 | 279 | Ar--Kansas City---Lv | 530,000 | 11:30 | 4:00 |

* - Stops on signal to receive or discharge revenue passengers.
# - Stops on signal to receive revenue passengers.
@ - Stops on signal to discharge revenue passengers.

[A2755]

---

Norfolk and Western Railway Company operated two intrastate passenger trains, numbered 209 and 210. The PSC authorized discontinuance of these two

trains by a report and order dated April 11, 1969, as noted by the ICC in the report in question.

The material parts of the challenged report, Finance Docket No. 25282, decided October 17, 1969, are reported in 334 I.C.C. 792 to 806.

The facts found by the ICC (as distinguished from the conclusions and order) are accepted by all parties as substantially correct.

On October 17, 1969, a formal order (effective 35 days from service thereof) was entered by the ICC authorizing MoPac to discontinue trains Nos. 14 and 17 on five days' notice to the public. Petitions for reconsideration of the report and order filed by Jefferson City and others were denied by the ICC on November 26, 1969.

Pursuant to requirement of the order for five days' notice to the public MoPac publicly posted, and certified to the Commission the posting of the following notice:

# Notice

**MISSOURI PACIFIC TRAINS 17 and 14 will be discontinued between St. Louis and Kansas City after completing their runs December 2, 1969.**

**Effective December 3, 1969 the remaining Trains 15 (renumbered 17) and 16 will provide service between St. Louis and Kansas City on the following schedules —**

| TRAIN 17 (Read Down) | | | | TRAIN 16 (Read Up) |
|---|---|---|---|---|
| 9:30 AM | Lv. | St. Louis | Ar. | 5:10 PM |
| • 9:50 AM | Lv. | Kirkwood | Ar. | ∥ 4:30 PM |
| 10:27 AM | Lv. | Washington | Lv. | 3:50 PM |
| ℮ 10:52 AM | Lv. | Hermann | Lv. | ℮ 3:24 PM |
| ℮ 11:02 AM | Lv. | Gasconade | Lv. | ℮ 3:14 PM |
| ℮ 11:14 AM | Lv. | Chamois | Lv. | ℮ 3:02 PM |
| 11:40 AM | Ar. | Jefferson City | Lv. | 2:40 PM |
| 11:41 AM | Lv. | Jefferson City | Ar. | 2:35 PM |
| 12:10 PM | Lv. | California | Lv. | 2:04 PM |
| f 12:22 PM | Lv. | Tipton | | • • |
| 12:47 PM | Lv. | Sedalia | Lv. | 1:25 PM |
| ℮ 1:12 PM | Lv. | Knobnoster | Lv. | ℮ 12:57 PM |
| 1:25 PM | Lv. | Warrensburg | Lv. | 12:45 PM |
| ℮ 1:39 PM | Lv. | Holden | | • • |
| ℮ 1:59 PM | Lv. | Pleasant Hill | Lv. | ℮ 12:13 PM |
| ℮ 2:13 PM | Lv. | Lee's Summit | Lv. | ℮ 12:01 PM |
| 2:28 PM | Ar. | Independence | Lv. | ℮ 11:45 AM |
| 3:00 PM | Ar. | Kansas City | Lv. | 11:30 AM |

℮ Stops to receive or discharge revenue passengers
• Stops to receive revenue passengers
∥ Stops to discharge revenue passengers
f Stops on signal

## MISSOURI PACIFIC RAILROAD COMPANY

Missouri Pacific Building
St. Louis, Mo. 63103

November 26, 1969

[A2756]

On December 1, 1969, the complaint in this action was filed and the restraining order was issued.

### Plaintiffs' Contentions

The plaintiffs contend that the report and order should be set aside and a permanent injunction issued against discontinuance of trains numbered 14 and 17 because:

"I. The Commission's order must be set aside because it is inconsistent with the findings of the report.

II. The findings of the report are not supported by substantial evidence.

III. The Commission is without authority to substantially modify the proposal placed before the state agency and is without authority to initially determine a change in service.

IV. The report and order are inconsistent with the finding concerning discontinuance of the Norfolk and Western Trains.

V. The Commission's finding as to the overall burden of operating the four trains is unsupported by substantial evidence and contradictory.

VI. The finding that four trains are not needed is arbitrary and capricious.

VII. The order should be set aside and the cause remanded for consideration of labor conditions."

Under the law as applied to the uncontroverted facts of this case, it will be unnecessary to pass on the contentions of plaintiffs I, II, IV, V, VI and VII, because the record shows that the ICC undertook to exercise initial jurisdiction to authorize in substance the discontinuance of trains Nos. 14 and 15, a proposal never submitted to, heard or denied by the Missouri Public Service Commission. Apparently recognizing the infirmity of its authority to authorize the discontinuance of trains numbered 14 and 15, the ICC undertook indirectly to do this by authorizing the discontinuance of trains numbered 14 and 17, and simultaneously concluding that the schedule of one of the remaining trains, numbered 15, "should be changed to more nearly conform with the schedule of train No. 17 * * *" The defendants argue that this portion of the report concerning the change of schedule is not a "finding" or a requirement of the report and order, but is simply a suggestion by the ICC. The plaintiffs argue that this portion of the report was such a substantial departure from any of the proposals submitted and passed upon by the Missouri Public Service Commission that it was the equivalent of an unauthorized exercise of initial power to approve discontinuance of intrastate trains in violation of § 13a(2), Title 49, U.S.C.

No one contends that on the facts in the record that the ICC had the power to order discontinuance of trains numbered 14 and 15, leaving trains numbered 16 and 17 in operation. Yet this is the result and substance of the report and order. The order purports to authorize discontinuance of trains Nos. 17 and 14, but in reality authorizes discontinuance of trains Nos. 14 and 15 by initiating a change of schedule of train No. 15 to the schedule of train No. 17. In implementing the requirement of public posting, MoPac gave train No. 15 the schedule of discontinued train No. 17, and even changed its number to train No. 17. What the ICC could not initially do was to discontinue trains Nos. 14 and 15 and leave trains Nos. 16 and 17 running. Yet this was the intended consequence of its report and order. The following abbreviated schedules make this apparent:

### Result of Unauthorized Discontinuance of Trains Nos. 14 and 15

| Train 17 | Train 16 |
|---|---|
| 9:30 AM Lv. St. Louis | Ar. 5:10 PM |
| 3:00 PM Ar. Kansas City | Lv. 11:30 AM |

Compare these schedules with the schedules resulting from the report and order. They are precisely the same even

to the change of the number of train No. 15 to No. 17. Even if the number of train No. 15 had not been changed to No. 17 the substance would have been the same.

This result is forbidden by § 13a(2), Title 49, U.S.C., which is as follows:

"(2) Where the discontinuance or change in whole or in part, by a carrier or carriers subject to this chapter, of the operation or service of any train or ferry operated wholly within the boundaries of a single State is prohibited by the constitution or statutes of any State or where the State authority having jurisdiction thereof shall have denied an application or petition duly filed with it by said carrier or carriers for authority to discontinue or change, in whole or in part, the operation or service of any such train or ferry or shall not have acted finally on such an application or petition within one hundred and twenty days from the presentation thereof, such carrier or carriers may petition the Commission for authority to effect such discontinuance or change. The Commission may grant such authority only after full hearing and upon findings by it that (a) the present or future public convenience and necessity permit of such discontinuance or change, in whole or in part, of the operation or service of such train or ferry, and (b) the continued operation or service of such train or ferry without discontinuance or change, in whole or in part, will constitute an unjust and undue burden upon the interstate operations of such carrier or carriers or upon interstate commerce. When any petition shall be filed with the Commission under the provisions of this paragraph the Commission shall notify the Governor of the State in which such train or ferry is operated at least thirty days in advance of the hearing provided for in this paragraph, and such hearing shall be held by the Commission in the State in which such train or ferry is operated; and the Commission is authorized to avail itself of the cooperation, services, records and facilities of the authorities in such State in the performance of its functions under this paragraph. Feb. 4, 1887, c. 104, Pt. I, § 13a, as added Aug. 12, 1958, Pub.L. 85–625, § 5, 72 Stat. 571."

The meaning of § 13a(2) was clearly stated in the unanimous opinion of the Supreme Court of the United States in New Jersey v. New York S. & W. R. Co., 372 U.S. 1, 83 S.Ct. 614, 9 L.Ed.2d 541, holding that Congress intended to leave initial jurisdiction over trains operating wholly within a single State with State regulatory commissions.

On this decisive point the intervening defendant MoPac concedes that "the Commission cannot take jurisdiction under 13a(2) until the state has denied the railroad's application or failed to act on it. If a different proposal is made to the Interstate Commerce Commission, of course it is not the one denied by the State." After conceding this MoPac argues that its two petitions filed separately at different times to discontinue two pairs and trains were consolidated in January 1968 "on a joint record" and, after hearings, denied in orders referring to all four trains. So, argues MoPac, the ICC simply modified in immaterial respects a denial of a proposal to discontinue four "unpaired trains". The difficulty with this argument is that the issues to be determined on the separate consolidated petitions were made by the separate petitions, not by the order of consolidation or the order denying both of the consolidated petitions. If the ICC had felt that it was simply modifying a request initially made to the Missouri Public Service Commission to discontinue four unpaired trains it could have said so, and then directly ordered trains numbered 14 and 15 discontinued. But it did not do so. It reviewed the total financial data broken down by pairs of trains as paired in the two separate petitions filed before the Missouri Public Service Commission.

It is also significant that no separate financial data on the costs of

trains Nos. 14 and 15 as a pair was reported by the ICC. Even if the ICC had authority under § 13a(2), Title 49, U.S.C., to order the discontinuance of trains Nos. 14 and 15 (which it has in effect done), evidence was not received on the effect of discontinuance of those trains and no findings were made on the effect of the discontinuance of those trains. Therefore, the report and order under review could not be permitted to stand because of the failure to receive evidence and make findings on the issues material to the discontinuance of trains Nos. 14 and 15. See Interstate Commerce Commission v. Mechling, 330 U.S. 567, 67 S.Ct. 894, 91 L.Ed. 1102; 2 K.Davis, Administrative Law Treatise §§ 16.05, 16.09, 16.10.

Because the statute and controlling authority, New Jersey v. New York S. & W. R. Co., *supra,* are clear it is not desirable to review the many ICC decisions, all of which are consistent with this holding.

Nor is it necessary to rule upon whether the reference in the ICC report to rescheduling train No. 15 to the schedule of train No. 17 was a "change in service never submitted to the Missouri Public Service Commission." We have found on the contrary, that this was an indirect way to effect an unauthorized discontinuance of trains numbered 14 and 15.

The plaintiffs have no adequate remedy at law, and will suffer irreparable injury if the permanent injunction is denied. It is therefore

Ordered and adjudged that the part of the report of the ICC in Finance Docket No. 25282 (334 I.C.C. 792) and the part of the order of October 17, 1969, granting authority to discontinue operations of Missouri Pacific passenger trains Nos. 14 and 17 be, and they are hereby, set aside. It is further

Ordered and adjudged that the defendants and each of them be permanently enjoined from discontinuance of Missouri Pacific passenger trains Nos. 14 and 17, until new proceedings for such discontinuance shall have been initiated originally in the Missouri Public Service Commission and further authority for such discontinuance shall have been secured in accordance with law.